UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| US CENTRIFUGE SYSTEMS, LLC, ) | Case No. 15-04804-JJG |
| ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**DEBTOR'S FIRST DAY MOTION FOR AUTHORITY
TO MAINTAIN EXISTING BANK ACCOUNT
AND CONTINUE USE OF BUSINESS FORMS**

US Centrifuge Systems, LLC, as debtor and debtor-in-possession (the "Debtor"), by counsel, pursuant to 11 U.S.C. §§ 105(a), 363, and 364, requests that the Court enter an Order authorizing and allowing the Debtor to maintain its existing bank account and continue the use of its existing business forms. In support of its motion, the Debtor states as follows:

## I. General Background

1. On June 3, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this Chapter 11 Bankruptcy Case. No official unsecured creditors' committee has yet been appointed in this Chapter 11 Bankruptcy Case.

3. This is a "First Day Motion" as that term is defined in Southern District of Indiana Local Rule B-9013-3(f).

4.   The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.   Proposed counsel for the Debtor has discussed this filing of this motion with the courtroom deputy for the Honorable Jeffrey J. Graham, Judge, U.S. Bankruptcy Court for the Southern District of Indiana and a staff attorney for the United States Trustee, in accordance with Southern District of Indiana Local Rule B-9013-3(b).

## II.   Relief Requested

6.   The Office of the United States Trustee ("UST") has established certain operating guidelines for debtors-in-possession to supervise the administration of Chapter 11 cases (the "UST Guidelines").  One provision of the UST Guidelines requires a Chapter 11 debtor-in- possession to open new bank accounts and to close all existing accounts.  The UST Guidelines also require that new bank accounts be opened at certain financial institutions designated as authorized depositories by the UST.

7.   The Debtor maintains one (1) Bank Account in the ordinary course of its business (the "Bank Account" and described more fully below), which serves as the Debtor's operating account.

- The Debtor maintains an account with BMO Harris Bank ("BMO").  This account will serve as the Debtor's main operating account (the "BMO Operating Account"), and is in the name of US Centrifuge Systems, LLC.  The approximate available balance as of the Petition Date of this account is $5,321.93.

2

8. By this motion, the Debtor seeks a waiver of the UST requirement that it close the BMO Operating Account and open new post-petition bank accounts at depositories authorized by the UST. The UST requirement that the Debtor close and replace the BMO Operating Account would unnecessarily disrupt the Debtor's business, impair its efforts to successfully reorganize and maintain the value of the business, and would not provide any significant benefit to the Debtor's Bankruptcy Estate, its creditors, or parties-in-interest. It is critical to the continued operation of the Debtor's business and the preservation of the value of its assets that the Debtor's continue to utilize its existing BMO Operating Account without disruption.

9. The schedules filed or to be filed in this case will show that the Debtor has "hard" assets in excess of $2.1 million dollars with no allowance for the intangible, going concern value of the Debtors business. <u>And no secured debt</u>, a highly unusual situation.

10. These attributes of the Debtor's business arise from the fact that related party unsecured loans of more than $3.5 million dollars have provided and will continue to provide needed, unsecured financing to the Debtor's business activities.

11. The Debtor anticipates proposing a Plan of Reorganization that will pay 100% of the principal of the claims of unsecured trade creditors.

12. The Debtor's related party entities also intend to finance the Debtor's continuing operations throughout this Chapter 11 case.

13. The Debtor's related entities intend to subordinate or reduce their unsecured claims of $3.5 million to insure payment of the principal of trade claims.

14. There is no foreseeable circumstance in which trade creditors will be impacted by continuation of the Debtor's current banking relationships.

15. Thus the payment of ordinary course creditors in full is highly likely and so the rationale behind account closure and establishment of new DIP accounts is not applicable in this case.

16. Furthermore, the filing of this Bankruptcy Case will undoubtedly be publicized and will place a strain on the Debtor's relationship with parties that are essential to the Debtor's continued operations and successful reorganization. Requiring the Debtor to close the BMO Operating Account and open a new account would further strain these relationships due to potential payment delays and resulting confusion. On the other hand, granting the relief requested herein will avoid unnecessary disruption and confusion, and allow the efficient administration of this Chapter 11 Bankruptcy Case.

17. The BMO Operating Account described herein is central to the Debtor's ordinary, usual, and essential business practices, and the organization and mechanics are similar to those commonly employed by corporate enterprises comparable to the Debtor in size and complexity. It is critical and essential that the Debtor be permitted to continue to utilize and maintain the BMO Operating Account to manage its cash and transfer money as needed in amounts necessary to continue the operation of its business. If the relief requested herein is granted, the Debtor's bank will be instructed not to pay any debts incurred prior to the Petition Date unless this Court specifically authorizes such payment.

18. Specifically, the Debtor requests that: (a) the Debtor and BMO be authorized to continue to perform pursuant to the terms of the prepetition agreements that exist between them; (b) BMO be authorized and directed to continue to administer

4

the BMO Operating Account as such accounts were maintained pre-petition, without interruption and in the usual and ordinary course of business, and to pay any and all checks, drafts, wires, or ACH transfers issued on the BMO Operating Account on account of any claims arising after the Petition Date so long as sufficient funds are in such BMO Operating Account; (c) BMO be authorized and directed to honor all representations from the Debtor as to which checks should be honored and dishonored; and (d) any final payment made by BMO prior to the Petition Date (including any ACH or wire transfers the banks are or become obligated to settle) against the BMO Operating Account, or any instrument issued by a bank on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid pre-petition, whether or not actually debited from the BMO Operating Account pre-petition.  To the extent the Debtor has directed that any pre-petition checks be dishonored, it reserves the right to issue replacement checks to pay the amounts related to such dishonored checks, consistent with Orders of the Court.

19.     In addition, the Debtor requests relief from the UST Guidelines to the extent they require the Debtor to make all disbursements by check.  Considering the complexity and time sensitive nature of the Debtor's operations, it is necessary for the Debtor to conduct some transactions by wire transfer.  To deny the Debtor the opportunity to conduct wire transfers would interfere with the Debtor's performance of its contracts and unnecessarily disrupt the Debtor's business operations.

20.     Furthermore, in order to use the property of its Bankruptcy Estate and to ensure an orderly transition into this Chapter 11 Bankruptcy Case, the Debtor also

5

requests authority to continue to deem the BMO Operating Account a "debtor-in-possession" account.

21. The Debtor, in its ordinary course of business, uses many pre-printed correspondence and business forms. To minimize the expense to its Bankruptcy Estate, the Debtor also requests that it be authorized to continue to use all correspondence, business forms (including, but not limited to, letterhead, purchase orders, invoices, etc.), and checks existing immediately prior to the Petition Date, without reference to the Debtor's status as a debtor-in- possession. Changing correspondence and business forms would be unnecessary and burdensome to the Bankruptcy Estate, as well as expensive and disruptive to the Debtor's business operations. Parties doing business with the Debtor undoubtedly will be aware, if not already, of the Debtor's status as debtor-in-possession. Nevertheless, the Debtor agrees to label "debtor-in-possession" or "DIP" on all such business forms.

22. Accordingly, the Debtor requests authority to use its respective correspondence and business forms and hereby represents that the Debtor will place the label "debtor-in- possession" or "DIP" on all correspondence and business forms.

### III.   Basis for the Relief Requested

23. Authority for the relief requested herein may be found under § 363(c) of the Bankruptcy Code, which allows the Debtor to use, sell, or lease property in the ordinary course of business, and in § 363(b)(1) of the Bankruptcy Code, which provides that a debtor-in- possession, after notice and a hearing, may "use, sell or lease, other than in the ordinary course of business, property of the estate." Section

105(a) of the Bankruptcy Code provides additional authority stating that the Court may issue any order necessary or appropriate to carry out the provisions of title 11.

24. In this Bankruptcy Case, it is appropriate to grant the relief requested as the benefits of maintaining the BMO Operating Account and using existing correspondence and business forms vastly outweighs the *de minimus* burden and inconvenience, if any, on interested parties.

25. The relief requested herein or similar relief has been granted in numerous cases in this District (*see, e.g., In re Buehler Foods, Inc., et al.*, Case No. 05-70961-BHL-11; *In re ATA Holdings Corp., et al.*, Case No. 04-19866-BHL-11; and *In re Paul Harris Stores, Inc., et al.*, Case No. 00-12467-BHL-11) as well as cases around the country (*see, e.g., In re Friedman's, Inc., et al.*, Case No. 08-10161 (CSS) (Bank. D.Del. 2008)).

26. Based on the foregoing, the Debtor respectfully requests that the Court enter an Order granting the relief requested herein as it is in the best interests of the Debtor, its creditors and the Bankruptcy Estate and is critical to the ability of the Debtor to successfully reorganize.

THEREFORE, the Debtor respectfully requests that the Court enter an Order: (1) authorizing the Debtor to maintain its existing BMO Operating Account; (2) authorizing the Debtor to continue to use its existing correspondence and business forms; and (3) granting the Debtor such other and further relief as the Court deems proper.

Respectfully submitted,

KROGER, GARDIS & REGAS, LLP


By: /s/James A. Knauer
James A. Knauer, Atty # 5436-49
Harley K. Means, Atty # 23068-32
Attorneys for US Centrifuge Systems, LLC
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
317-692-9000 - phone
jak@kgrlaw.com
hkm@kgrlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 4, 2015, a copy of the above and foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System or via e-mail. Parties may access this filing through the Court's system.

| | |
|---|---|
| U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Jeannette E. Hinshaw<br>jeannette.hinshaw@usdoj.gov |
| Acme Metal Spinning<br>info@acmemetalspinning.com | Alro Steel Corporation<br>jduzan@alro.com |
| Loyal Manufacturing<br>mike@loyalmfg.com | Aramark Uniform Services<br>jason.haury@uniform.aramark.com |
| Bearing Headquarters Co.<br>jsisil@headco.com | Bisco Industries<br>ar@biscoind.com |
| Drycake<br>mark@drycake.com | FloSource<br>sales@flsource.com |
| Kirby Risk Corporation<br>kford@kirbyrisk.com | Levitronix Technologies LLC<br>purchaseorder@levitronix-us.com |
| Marion County Treasurer<br>mytaxes@indy.gov | McMaster-Carr<br>chi.sales@mcmaster.com |
| Neff Engineering Co., Inc.<br>lgirton@neffengineering.com | OTP Industrial Solutions<br>dparks@otpnet.com |
| Pillar Innovations<br>accountsreceivable@pillarinnovations.com | Precision Balancing Company<br>service@precisionbalance.com |
| RB Machine Company<br>ron@rbmachinecompany.com | Workrite Aerostar Machine & Tool<br>rsheets@workriteaerostar.com |
| Joseph M. Brown, Jr.<br>jmb@cunninghambounds.com | David A. Lee<br>dlee@pljpc.com |
| Harvey B. Morris<br>hmorris@mkhlawyers.ocm | |

      I further certify that on June 5, 2015, a copy of the above and foregoing was transmitted by facsimile to the following:

| | |
|---|---|
| Ancel Products<br>(314) 481-9004 | Shaw Machining Services<br>(765) 663-2577 |

                    /s/ James A. Knauer

Kroger, Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000
jak@kgrlaw.com